IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT CARR, JR.,

                Plaintiff,

     v.                                      OPINION and ORDER

LARRY FUCHS, MR. GLASS, RYAN BLOUNT, and         22-cv-603-jdp
LIEUTENANT HOFFSTATTER,

                Defendants.

---

Pro se plaintiff Robert Carr, Jr. has filed several complaints alleging violations of his civil rights based on placement in segregation. I will exercise my discretion and treat Carr's third amended complaint (his most recent complaint) as the operative complaint.

The court granted Carr leave to proceed in forma pauperis. Because Carr proceeds in forma pauperis, I must screen his third amended complaint under 28 U.S.C. § 1915(e)(2)(B). I must dismiss any portion of the third amended complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept the third amended complaint's allegations as true and construe them generously, holding the third amended complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

I will not allow Carr to proceed on the third amended complaint because he has failed to state a claim upon which relief may be granted. But I will allow Carr to file a fourth amended complaint that corrects this deficiency. This order will also address several of Carr's other motions.

ALLEGATIONS OF FACT

Carr is incarcerated at Columbia Correctional Institution (CCI). Defendants are employees of the Wisconsin Department of Corrections (DOC) and work at CCI.

Defendant Fosshage placed Carr in segregation because a prisoner reported that he had received "intoxicants" from Carr. Four days later, defendant Peters wrote a conduct report stating that an illegal substance had been found in Carr's cell on the day that he was placed in segregation. Carr wrote to defendants Fuchs and Blount and asked for an investigation because Fosshage and defendant Cormican were "providing false statements to justify [his] stay in segregation," but they ignored him.

Carr's due process hearing took place 16 days after he was placed in segregation. Blount had assured Carr that "all evidence" would be available at his due process hearing, but "none of the evidence was." Carr was found guilty based on Peters's statement that the illegal substance was found in Carr's locker. Cormican was not "present for questioning" at the hearing.

Carr appealed to Fuchs, contending that he "was not shown the contraband" and that his "other evidence [i.e., camera footage]" was not presented. Carr received a rehearing approximately three weeks after his original hearing. Defendant Pitzen found Carr guilty based on the statements of Cormican and Peters and Pitzen "affirmed" 120 days' disciplinary segregation.

Carr appealed, contending that he "was never shown the contraband," and Fuchs affirmed. Carr's appeal was dismissed because Fuchs stated that Pitzen confirmed that he showed Carr the contraband.

At Carr's request, Blount agreed to preserve video footage of the due process hearing. Fuchs dismissed the conduct report because the "Committee failed to document into evidence that [Carr] had an opportunity to review photo evidence." Carr filed a grievance about "the facts relating to this complaint." His grievance was denied and "Madison" affirmed the denial.

ANALYSIS

Carr asserts a due process claim and Wisconsin-law claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Carr seeks damages, a declaration that his federal rights were violated, and unspecified injunctive relief. After screening the substantive allegations in the complaint, the court will turn to Carr's other motions.

**A.  Screening the complaint**

**1.  Due process claim**

A "prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (alteration adopted). To assess whether a deprivation poses an atypical and significant hardship, courts generally "(1) compare the conditions of disciplinary segregation to those of discretionary segregation; (2) compare the conditions of disciplinary segregation to those in the general prison population; and (3) determine whether the disciplinary action affects the length of the inmate's sentence." *Id.*; *see also Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) ("[D]isciplinary segregation can trigger due process protections depending on the duration and conditions of segregation.").

Carr has not provided any allegations comparing the conditions of his disciplinary segregation to the conditions outside of disciplinary segregation or otherwise alleged that the conditions of disciplinary segregation were "unusually harsh." *See Perkins v. Givens*, 688 F. App'x 397, 399 (7th Cir. 2017). And 120 days' disciplinary segregation are "too short, standing alone, to implicate a liberty interest." *See id.*; *see also Miller v. Maue*, 759 F. App'x 515, 516 (7th Cir. 2019) ("[H]is four-month stay in segregation also does not implicate a liberty interest, because Miller does not allege, or contend on appeal, that the conditions of his segregation were 'unusually harsh.'"); *Beamon v. Pollard*, 711 F. App'x 794, 795 (7th Cir. 2018) (stating that "135 days in segregation—absent any atypical conditions related to confinement—does not violate the Fourteenth Amendment"). Because Carr's allegations do not suggest that he had a liberty interest in avoiding disciplinary segregation, I will not allow him to proceed on his due process claim.

### 2. Wisconsin-law claims

I decline to exercise supplemental jurisdiction over Carr's Wisconsin-law claims because I have dismissed his sole federal claim. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (courts usually decline to exercise supplemental jurisdiction over "pendent state-law claims" if "all federal claims are dismissed before trial").

### 3. Request for injunctive relief and motion for preliminary injunction

Carr asks for injunctive relief in his third amended complaint but does not specify the injunctive relief that he seeks. In his motion, Carr asks for an injunction requiring defendants to "abide by [their] own policy, procedures, and regulations." Dkt. 2 at 1. I will deny Carr's motion and request for injunctive relief because I have dismissed his third amended complaint. In any case, it is questionable whether I could order DOC officials to comply with correctional

regulations. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020) (stating that a "violation of a jail policy is not a constitutional violation enforceable under 42 U.S.C. § 1983").

### 4. Opportunity to amend

I will give Carr a final chance to amend his third amended complaint to fix the above problems. In drafting his fourth amended complaint, Carr should remember to do the following:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, a violation of federal law.

- Identify by full name all the individuals he wishes to sue in the fourth amended complaint's caption.

- Omit legal arguments other than explaining what types of claims he wishes to assert.

## B. Other motions

Carr has moved to preserve camera footage. Dkt. 11. I will deny this motion without prejudice because I have yet to allow the case to proceed. In any case, Carr's allegations are too conclusory to suggest that this purported evidence is at risk of destruction. *See id.*

Because I exercised my discretion to screen Carr's third amended complaint, I will deny as moot Carr's motions to amend his complaint and first amended complaint. Dkt. 12 and Dkt. 17. Because Carr sued defendant Fosshage in his third amended complaint, I will deny as moot Carr's motion to add Fosshage as a defendant. Dkt. 21.

Carr seeks appointment of counsel because he is "not trained in legal argument." Dkt. 15. Litigants in civil cases do not have a constitutional right to counsel, and I do not have the authority to appoint counsel to pro se plaintiffs in civil matters. Rather, I can only assist in recruiting counsel who may be willing to serve voluntarily. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc). So I will construe Carr's motion as a motion for assistance in recruiting counsel.

A party requesting assistance in recruiting counsel must show three things: (1) he cannot afford to hire a lawyer, 28 U.S.C. § 1915(e)(1); (2) he made reasonable efforts on his own to find a lawyer to represent him, *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992); and (3) the legal and factual difficulty of the case exceeds his ability to prosecute it, *Pruitt*, 503 F.3d at 655.

Carr meets the first requirement because he is proceeding in forma pauperis. As for the second requirement, this court generally requires plaintiffs to submit letters from at least three attorneys to whom they have written and who have refused to take the case. Because Carr hasn't submitted any such letters or described any efforts that he has taken to obtain counsel to represent him, he hasn't met the second requirement. And, even had Carr tried to obtain counsel on his own, it is too early to tell whether this case will boil down to issues that are too complex for him to handle. If this case proceeds past screening and Carr wishes to renew his motion for assistance in recruiting counsel, he will have to specifically explain what litigation tasks would be too difficult for him to complete.

ORDER

IT IS ORDERED that:

1.  Plaintiff Robert Carr, Jr.'s third amended complaint, Dkt. 23, is DISMISSED.

2.  Plaintiff may have until April 3, 2023, to file a fourth amended complaint that corrects the above deficiencies.

3.  Plaintiff must file his fourth amended complaint on the court's prisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages.

4.  The fourth amended complaint will act as a complete substitute for the prior complaints. This case will proceed on only the allegations made and claims presented in the fourth amended complaint, and against only the defendants specifically named in the fourth amended complaint's caption.

5.  If plaintiff fails to comply with this order, I may dismiss this case.

6.  Plaintiff's motion for preliminary injunction, Dkt. 2, is DENIED.

7.  Plaintiff's motion to preserve evidence, Dkt. 11, is DENIED without prejudice.

8.  Plaintiff's motions to amend, Dkt. 12 and Dkt. 17, are DENIED as moot.

9.  Plaintiff's motion for assistance in recruiting counsel, Dkt. 15, is DENIED without prejudice.

10. Plaintiff's motion to add a defendant, Dkt. 21, is DENIED as moot.

11. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

12. If plaintiff is transferred or released while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

13. The clerk of court is directed to send plaintiff copies of this order and the court's prisoner complaint form.

Entered March 3, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge