IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT CARR, JR.,

                Plaintiff,

v.                                                    OPINION and ORDER

LARRY FUCHS, MR. GLASS, RYAN BLOUNT, and        22-cv-603-jdp
LIEUTENANT HOFFSTATTER,

                Defendants.

---

I dismissed pro se plaintiff Robert Carr, Jr.'s third amended complaint because it failed to state a claim upon which relief may be granted, but I allowed Carr to file a fourth amended complaint to fix that problem. In his fourth amended complaint, Carr alleges violations of the Fourteenth Amendment and Wisconsin law based on his placement in segregation.

Because Carr proceeds in forma pauperis, I must screen the fourth amended complaint under 28 U.S.C. § 1915(e)(2)(B). I must dismiss any portion of the fourth amended complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Carr's allegations as true and construe them generously, holding the fourth amended complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Because Carr has again failed to state a claim upon which relief may be granted, and because his claims are futile, I will dismiss the fourth amended complaint with prejudice and direct the clerk of court to record a strike under 28 U.S.C. § 1915(g).

ALLEGATIONS OF FACT

Carr is incarcerated at Columbia Correctional Institution (CCI). Defendants are employees of the Wisconsin Department of Corrections (DOC) and work at CCI.

On September 10, 2022, Defendant Fosshage placed Carr in segregation without telling him why. Four days later, Carr received a conduct report in which defendant Peters stated that defendant Cormican told Peters that an illegal substance was found in Carr's possession during a search of his cell. The conduct report was false because no substance was found in Carr's cell. Carr received a due process hearing before defendant Pitzen and was found guilty based on Peters's statement that the substance was found in Carr's locker. Peters did not allow Carr to present evidence, view the evidence (presumably the illegal substance), or question Cormican. Three days later, Fuchs ordered a rehearing after Carr complained to him. (Carr refers to Fuchs as a defendant in the fourth amended complaint's body but fails to name him as a defendant in the fourth amended complaint's caption.) Fuchs ordered Cormican to be present and for Carr to be shown the evidence.

Carr received a rehearing during which he questioned Cormican. Carr was found guilty based on the statements of Cormican and Peters and received 120 days' disciplinary segregation. No evidence was produced and Carr did not get to produce evidence.

Carr appealed to Fuchs, contending that the officers provided false statements, no evidence was produced, and that he did not get to produce evidence. Fuchs affirmed the decision, and Carr's appeal was dismissed based on Fuchs's statement that Pitzen told him that Carr was shown the evidence.

2

Upon Carr's request, nondefendant Blount told Carr that video footage from the hearings was saved. Carr asked Fuchs to review the video footage, after which Fuchs dismissed the conduct report.

In segregation, Carr could not work as a law clerk or participate in a substance abuse program. Carr suggests that he is no longer eligible for these programs based on his disciplinary charges, though he fails to explain how this is the case in view of Fuchs's ultimate dismissal of the conduct report. In segregation, Carr went from: (1) calling his family every day to only twice a month; (2) attending the law library daily to maybe once weekly; and (3) moving around the prison to wearing shackles everywhere he went. Carr could not attend religious service in segregation. Carr's segregation affected his relationship with his family and increased his anxiety, causing him to go back on medication and have trouble sleeping. Carr was the only prisoner who was not initially told why he was placed in segregation, who failed to receive an opportunity to be heard, and who could not view or present evidence.

ANALYSIS

Carr alleges a procedural due process claim under federal law and claims for malicious prosecution, false imprisonment, and intentional infliction of emotional distress under Wisconsin law. I also read the fourth amended complaint to allege an equal protection violation.

**A. Procedural due process**

A "prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lekas v.*

*Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (alteration adopted); *see also Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) ("[D]isciplinary segregation can trigger due process protections depending on the duration and conditions of segregation."). One hundred twenty days' disciplinary segregation are too short, standing alone, to create a liberty interest. *See Miller v. Maue*, 759 F. App'x 515, 516 (7th Cir. 2019) ("[H]is four-month stay in segregation also does not implicate a liberty interest, because Miller does not allege, or contend on appeal, that the conditions of his segregation were 'unusually harsh.'"); *Beamon v. Pollard*, 711 F. App'x 794, 795 (7th Cir. 2018) (stating that "135 days in segregation—absent any atypical conditions related to confinement—does not violate the Fourteenth Amendment"). So, for Carr to plead that he had a liberty interest in avoiding segregation, his allegations must suggest that the conditions of his segregation were "unusually harsh." *See Perkins v. Givens*, 688 F. App'x 397, 399 (7th Cir. 2017); *see also Miller*, 759 F. App'x at 516; *Beamon*, 711 F. App'x at 795.

    Carr's allegations do not suggest this. Carr's allegation that he had to wear shackles while being escorted does not suggest that his segregation was unduly harsh. *See Ruggiero v. Fischer*, 807 F. App'x 70, 73 (2d Cir. 2020) (prisoner had no liberty interest in exercising without mechanical restraints); *Key v. McKinney*, 176 F.3d 1083, 1087 (8th Cir. 1999) (twenty-four hours in restrains "did not work a major disruption in Key's prison life"); *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) (prisoner's wearing restraints for four hours was not an "atypical and significant hardship" in his prison life where he was accused of a disciplinary violation and was in the presence of officers). Because Carr was in segregation and being escorted, his allegations fail to suggest that his shackling had "no adequate security rationale." *Cf. Wells v. Franzen*, 777 F.2d 1258, 1263 (7th Cir. 1985).

Carr alleges that he could not work as a law clerk or participate in a substance abuse program while in segregation. But prisoners have no liberty or property interest in rehabilitative activities or prison jobs. *See DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409, 423–25 (7th Cir. 2020) (en banc); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996). Carr contends that successful participation in the substance abuse program would have resulted in earlier Program Review Committee consideration for "medium placement." *See* Dkt. 25 at 4. But "prisoners possess neither liberty nor property [interests] in their classifications and prison assignments." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992). In any case, Carr alleges that Fuchs ultimately dismissed the conduct report, which further belies the notion that he had a liberty interest to be free from 120 days' segregation. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995).

Carr alleges that, in segregation, he could call his family only twice a month and attend the law library maybe once a week. But "limitations on law library and telephone use" typically fail to support a procedural due process claim. *See Rowell v. Gozinske*, No. 08-cv-467-bbc, 2008 WL 4159147, at *2 (W.D. Wis. Sept. 4, 2008); *cf. Mathews v. Brown*, 768 F. App'x 537, 540 (7th Cir. 2019) (prisoner had no liberty interest to be free from segregation that involved, among other conditions, "three phone calls per month"). Carr's bare assertion of limited phone and law library access does not suggest a violation of any other constitution right. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (prisoners lack "an abstract, freestanding right to a law library"); *Boriboune v. Litscher*, 91 F. App'x 498, 499 (7th Cir. 2003) ("[T]hough prisoners have a right under the First Amendment to communicate with others outside the prison, we have expressed doubt that this amounts to an unqualified right for a prisoner to have access to a telephone . . . ." (citations omitted)). Carr contends that he could not attend religious services

5

in segregation, but he fails to allege that this restriction substantially burdened his religious exercise or was accompanied by "*extraordinarily* restrictive conditions." *Cf. Westefer v. Snyder*, 422 F.3d 570, 589 (7th Cir. 2005) (emphasis added). The conditions Carr describes are ordinary at prisons, not extraordinary or unduly harsh. *Cf. Sandin*, 515 U.S. at 486 (noting that the conditions at the plaintiff's prison involved "significant amounts of lockdown time even for inmates in the general population"); *Turner v. United States*, No. 09-cv-796, 2010 WL 342555, at *1 (E.D. Wis. Jan. 22, 2010) (stating that lockdowns and limited law library access "are extremely common in prison settings").

Carr's allegation that segregation affected his relationship with his family does not suggest that it was significantly harsher than ordinary prison life. *See United States v. Canoy*, 38 F.3d 893, 907 (7th Cir. 1994) ("[T]he disintegration of existing family life . . . is to be expected when a family member engages in criminal activity that results in a period of incarceration."). Carr adds that his segregation increased his anxiety, which caused him to go back on medication and disrupted his sleep. But Carr has not alleged that these mental health problems were debilitating, and his allegations fail to suggest that the conditions of his segregation were harsh enough to produce "significant psychological" harm. *Cf. Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015). Carr's bare assertions of mental health problems, without more, fail to suggest that he had a liberty interest in avoiding 120 days' segregation. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 742, 744 (7th Cir. 2013) (182-day stay in disciplinary segregation that caused prisoner to have "psychological issues" was not an atypical and significant hardship).

Because Carr's allegations fail to suggest that the conditions of his 120 days of disciplinary segregation were unduly harsh, I will not allow him to proceed on his procedural due process claim.

## B. Equal protection

Carr alleges that he was the only prisoner who was not initially told why he was placed in segregation, who failed to receive an opportunity to be heard or view the evidence, and who could not view or present evidence. Carr fails to allege that he was mistreated because of his race, *see Donaldson v. City of Chicago*, 784 F. App'x 957, 960 (7th Cir. 2019), so I will analyze his equal protection claim under a "class of one" theory. To state a class-of-one equal protection claim, Carr "must allege that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012).

Carr alleges that he failed to receive certain procedural protections that other prisoners received in connection with disciplinary actions. But Carr fails to allege that defendants, instead of other prison officials, provided these procedural protections to other prisoners in those actions. Carr's bare assertion of unequal treatment fails to support a "reasonable inference" that defendants intentionally treated him differently than other prisoners. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In any case, courts have held that class-of-one equal protection claims "are likely never cognizable in the prison disciplinary context." *See, e.g.*, *Porter v. Dittman*, No. 18-cv-138-wmc, 2019 WL 6529974, at *5 n.4 (W.D. Wis. Dec. 4, 2019). This is because disciplinary actions almost always "involve[] discretionary decisions on whether and how to impose discipline on a prisoner," and "class-on-one equal protection claims [are] not available for discretionary

7

decisions based on a vast array of subjective, individualized assessments." *See Atkinson v. Mackinnon*, No. 14-cv-736-bbc, 2015 WL 506193, at *1 (W.D. Wis. Feb. 6, 2015). "Prison disciplinary regulations are not mandatory in the sense that they require a particular course of action." *Id.* "Rather, they may take many possible forms, depending on the judgment of the person imposing the discipline." *Id.* For instance, Carr correctly notes that he had a right to present witnesses and evidence at his disciplinary hearings, but this right is qualified. *See, e.g., Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (procedural due process requires prisoner to have opportunity to call witnesses and present documentary evidence "when consistent with institutional safety"); Wis. Admin. Code DOC §§ 303.80, 303.84, 303.87. Similarly, Carr contends that he could not view the evidence (presumably the alleged illegal substance), but I can find no rule requiring defendants to allow Carr to do this. Carr also contends that defendants failed to initially tell him why he was placed in segregation. But he acknowledges that he received a conduct report four days after that placement, and prison regulations do not require immediate notice of the violation. *See* Wis. Admin. Code DOC § 303.80(1); *see also Sweatt v. McBride*, 24 F. App'x 572, 576 (7th Cir. 2001) (prisoner "had no right to due process with respect to being moved into segregation").

Because Carr's class-of-one equal protection claim involves discretionary decisions about whether and how to discipline him, this claim is not viable. *See, e.g., Atkinson*, 2015 WL 506193, at *1; *Grant v. Laufenberg*, No. 12-C-668, 2015 WL 1246065, at *8 (E.D. Wis. Mar. 18, 2015) (granting summary judgment on class-of-one claim challenging "discretionary decisions regarding . . . when to place a prisoner in [temporary lockup] status, and when to write a conduct report"); *Jackson v. Flieger*, No. 12-CV-220-BBC, 2012 WL 5247275, at *4 (W.D. Wis. Oct. 23, 2012) (dismissing class-of-one claim where prisoner alleged that hearing

8

officer "treated him less favorably than the other prisoner accused of the same conduct"); *cf. Howard v. Koeller*, 756 F. App'x 601, 604 (7th Cir. 2018) (stating that, "[w]hen evaluating a conduct report, a hearing officer must weigh mitigating factors and defenses," which is "inherently discretionary"). And, even if Carr's allegations stated a class-of-one equal protection claim, it is obvious that qualified immunity would bar this claim. *See Williams v. Schultz*, No. 22-cv-2-jdp, 2022 WL 3138903, at *2 (W.D. Wis. Aug. 5, 2022); *Gonzalez v. Henneman*, No. 17-cv-715-jdp, 2018 WL 3863493, at *2 (W.D. Wis. Aug. 14, 2018). I will not allow Carr to proceed on his class-of-one equal protection claim.

**C. Wisconsin-law claims**

I decline to exercise supplemental jurisdiction over Carr's Wisconsin-law claims against because I have dismissed his federal claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (courts usually decline to exercise supplemental jurisdiction over "pendent state-law claims" if "all federal claims are dismissed before trial").

CONCLUSION

Courts should generally give pro se litigants one opportunity to amend a deficient complaint, *see Lewis v. Great Lakes Educ. Loan Servs.*, No. 21-cv-746-wmc, 2023 WL 1861152, at *3 (W.D. Wis. Feb. 9, 2023), but need not grant leave to amend "if it is clear that any amendment would be futile," *Bogie v. Rosenberg*, 705 F.3d 604, 608 (7th Cir. 2013). Carr's fourth amended complaint failed to fix the problems with his third amended complaint, leading me to conclude that any further attempts at amendment to state a federal claim would be futile. I will dismiss the fourth amended complaint with prejudice. I will also direct the clerk of court to record a strike under 28 U.S.C. § 1915(g). *See Boyd v. Bellin*, 835 F. App'x 886, 889 (7th

Cir. 2021) (affirming district court's dismissal, which issued a strike based on plaintiff's failure to state a federal claim, and acknowledging relinquishment of supplemental jurisdiction over negligence claim); *Faust v. Parke*, 114 F.3d 1191, at *3 (7th Cir. 1997) (counting dismissal as strike where all federal claims were dismissed and where court declined to retain jurisdiction over state-law claim).

ORDER

IT IS ORDERED that:

1. Plaintiff Robert Carr, Jr.'s fourth amended complaint, Dkt. 25, is DISMISSED with prejudice.

2. The clerk of court is directed to record a strike under 28 U.S.C. § 1915(g).

3. Carr's Wisconsin-law claims are DISMISSED because I decline to exercise supplemental jurisdiction over them.

4. The clerk of court is directed to enter judgment and to send plaintiff copies of this order and the judgment.

Entered April 24, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge