IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT CARR, JR.,

                Plaintiff,

v.                                                                                              ORDER

LARRY FUCHS, MR. GLASS, RYAN BLOUNT, and                   22-cv-603-jdp
LIEUTENANT HOFFSTATTER,

                Defendants.

---

In response to my order, pro se plaintiff Robert Carr, Jr. filed a fourth amended complaint alleging procedural due process and equal protection claims under 42 U.S.C. § 1983. I dismissed Carr's fourth amended complaint without leave to amend because it failed to state a claim upon which relief may be granted and because further amendment would have been futile. Dkt. 26. Carr has filed a motion for reconsideration in which he challenges some of the reasoning in my order and raises new allegations to support his dismissed claims. Dkt. 27. For reasons explained below, I will deny the motion, and direct the clerk of court to enter judgment.

A motion for reconsideration filed within 28 days after the entry of judgment is evaluated under Federal Rule of Civil Procedure 59(e). But the clerk has yet to enter judgment. So I must evaluate Carr's motion for reconsideration under Federal Rule of Civil Procedure 54(b), which provides that an order "may be revised at any time before the entry of judgment." *See Rainey v. Lipari Foods, Inc.*, 546 F. App'x 583, 585 (7th Cir. 2013); *but see Hilst v. Bowen*, 874 F.2d 725, 726 (10th Cir. 1989). The distinction is immaterial, however, because motions for reconsideration under Rule 59(e) and Rule 54(b) "are judged by largely the same standards." *Woods v. Resnick*, 725 F. Supp. 2d 809, 828 (W.D. Wis. 2010); *accord Hellige v. Wal-*

*Mart, Inc.*, No. 20-CV-455-DWD, 2020 WL 6149817, at *2 (S.D. Ill. Oct. 20, 2020) ("The standards applied under both Rule 59(e) and Rule 54(b) are virtually identical.").

"The court will grant a motion under Rule 54(b) only when necessary to correct manifest errors of law or fact or to present newly discovered evidence." *Collins Bey v. Ashworth*, No. 17-cv-784-jdp, 2022 WL 522995, at *4 (W.D. Wis. Feb. 22, 2022). A manifest error of law is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

If a party believes that "the deficiencies the court has identified can be cured through an amended complaint, it must proffer that document to the court in support of its motion [for reconsideration]." *Fannon v. Guidant Corp.*, 583 F.3d 995, 1002 (7th Cir. 2009). Even if the party does this, motions for reconsideration "may not be used to cure defects that could have been addressed earlier." *Id.*; *see also Anderson v. Cath. Bishop of Chi.*, 759 F.3d 645, 653 (7th Cir. 2014) (motions for reconsideration are "not properly utilized to advance arguments or theories that could and should have been made before the district court rendered a judgment"); *Woods*, 725 F. Supp. 2d at 828 (a motion for reconsideration "does not allow a party to . . . advance arguments that could and should have been presented to the district court prior to the judgment").

Carr contends that I erred in concluding that 120 days' disciplinary segregation, standing alone, is too short to create a protected liberty interest. But the Seventh Circuit has stated that "six months of segregation . . . , standing alone, would not trigger due process rights." *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009)). Carr correctly notes that a later case stated that "[s]ix months is not an apt presumptive minimum for establishing a [procedural due

2

process] violation." *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015). But no other Seventh Circuit case has relied on *Kervin* for the proposition that six months (or less) of segregation, standing alone, is sufficient to create a protected liberty interest. A later case acknowledged the conflicting statements in *Marion* and *Kervin* and concluded that "[a] sentence of four months in segregation . . . is not so atypical and significantly harsh that it creates a liberty interest." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019). Consistently, since *Kervin* several cases have concluded that 120 (or more) days' disciplinary segregation, standing alone, fails to create a protected liberty interest. *See Miller v. Maue*, 759 F. App'x 515, 516 (7th Cir. 2019) ("[H]is four-month stay in segregation also does not implicate a liberty interest, because Miller does not allege, or contend on appeal, that the conditions of his segregation were 'unusually harsh.'"); *Beamon v. Pollard*, 711 F. App'x 794, 795 (7th Cir. 2018) (stating that "135 days in segregation—absent any atypical conditions related to confinement—does not violate the Fourteenth Amendment"); *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017) ("Smith's 30 days in investigative segregation and approximately 3 months in disciplinary segregation were not long enough to raise a concern under the Due Process Clause."). I did not err in concluding that 120 days' disciplinary segregation, standing alone, is too short to create a liberty interest in avoiding disciplinary segregation.

Carr contends that I erred in concluding that defendant Fuchs's ultimate dismissal of the conduct report also supports the idea that Carr had a liberty interest in being free from 120 days' segregation. This is because, Carr reasons, he served his entire sentence before Fuchs dismissed the conduct report. But the dismissal of the conduct report further undercut his procedural due process claim because Carr is no longer subject to the disciplinary sanction. *See* Dkt. 26 at 5 (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). In any case, this point

was not essential to my dismissal of the procedural due process claim. Carr has not shown manifest error.

Carr contends that I erred in concluding that his disciplinary segregation was not significantly harsher than ordinary prison life even though it affected his relationship with his family. I cited a case for the proposition that "the disintegration of existing family life . . . is to be expected when a family member engages in criminal activity that results in a period of incarceration." Dkt. 26 at 6 (citing *United States v. Canoy*, 38 F.3d 893, 907 (7th Cir. 1994)). Carr attempts to distinguish this case, but I cited it to illustrate what's obvious: incarceration disrupts prisoners' relationships with their families. Carr contends that disciplinary segregation caused added disruption in his family life, but his allegations are too conclusory to suggest that this disruption was significantly harsher than ordinary prison life. My conclusion was not erroneous.

Carr contends that I erred in concluding that Department of Corrections (DOC) regulations did not require defendants to give Carr immediate notification of why he was placed in disciplinary segregation. Dkt. 27 (citing Wis. Admin. Code DOC § 303.10). Carr is correct that, before two working days, prison officials must "provide the inmate with the reason for [placement in temporary lockup] and with an opportunity to respond." Wis. Admin. Code DOC § 303.10(2). But Carr's observation does not change my disposition of his procedural due process claim because prisoners have "no right to due process with respect to being moved into segregation." Dkt. 26 at 8 (*Sweatt v. McBride*, 24 F. App'x 572, 576 (7th Cir. 2001)). The mere violation of a DOC regulation does not violate the constitution. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). For clarity of the record, I acknowledge here that, under Wis. Admin. Code DOC § 303.10(2), prison officials must "provide the inmate with the reason for

4

[placement in temporary lockup] and with an opportunity to respond" before two working days of that placement. But to be clear: this is an administrative rule and not a constitutional requirement.

Carr contends that I improperly dismissed his class-of-one equal protection claim because I erroneously concluded that he was not entitled to prompt notice of the reason for his placement in temporary lockup. But I dismissed this claim for another reason: Carr's "bare assertion of unequal treatment fail[ed] to support a reasonable inference that defendants intentionally treated him differently than other prisoners." Dkt. 26 at 7 (citing *Ashcroft v. Iqbal*, 675 F.3d 743, 747 (7th Cir. 2012)). In any case, although Wis. Admin. Code DOC § 303.10(2) suggests that the prisoner's right to prompt notice of placement in temporary lockup may be mandatory under state law, defendants' decision turned primarily on "discretionary decisions about whether and how to discipline him." *See* Dkt. 26 at 8. So qualified immunity would bar Carr's class-of-one equal protection claim. The purported error would be an inconsequential one that would not warrant reconsideration of my order.

Carr's other grounds for reconsideration have a common flaw: they turn on new allegations. Carr has not explained why he failed to raise these allegations earlier, and it is clear that he could have done this. These new allegations are not a basis for reconsideration. *See Anderson*, 759 F.3d at 653; *Fannon*, 583 F.3d at 1002.

I would have dismissed Carr's procedural due process claim even had Carr included his new allegations in the fourth amended complaint. Carr contends that: (1) the shackles he wore when he left his cell were tight and cut off blood flow to his hands, causing him pain and making his hands numb; (2) he could not pray in segregation because prisoners were constantly yelling, banging on their doors, and trying to commit suicide; and (3) he had to start taking

5

psychotropic medication after being off it for several months and suffered mental anguish, mental exhaustion, and racing thoughts. Carr's mostly "vague description" of these conditions adds little substance to the fourth amended complaint and fails to show any manifest error or law or fact in my determinations. *Cf. Lisle*, 933 F.3d at 721.

ORDER

IT IS ORDERED that:

1. Plaintiff Robert Carr, Jr.'s motion for reconsideration, Dkt. 27, is DENIED.
2. The clerk of court is directed to enter judgment and send Carr a copy of this order.

Entered May 3, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge